Shackelford, J.,
delivered the opinion of the Court.
The question in this cause arises on a demurrer to the declaration which was sustained by the Court below. The declaration states, the defendants were the pro *223 prietors of a certain railroad, over which they ran daily trains of cars in the county of Bradley. The time of the departure of each train, from each end of said road, and its arrival at the respective ends, to-wit: Chattanooga, Dalton and Knoxville, and all the intermediate points and stations in said County, being regulated hy advertised schedules; and- the defendants, being such owners of said railroad, and proposing to be governed by a fixed schedule, advertised and made public, in the running of its trains of cars, bargained and contracted with the plaintiff, at the defendant’s special instance and request, to hire plaintiff to work on said road, by way of repairing it; and plaintiff also, on his part, bargained and contracted to hire, and did hire himself to defendant, at defendant’s special request, to work on said road as aforesaid, for wages; and, while so working by way of repairing, under said bargain and contract, on the 9th day of July, 1861, a train of cars was started out on said road, by the agents of the defendants, from Chattanooga, bound for Cleveland, in said county, not in accordance with schedule time regulations, but materially differing from it, so • that the train came on the road where plaintiff was at work, being materially off of schedule time, whereby plaintiff was suddenly surprised and overtaken by said train, before he could get himself, and working tools, and dumpage car, off the way; and by the train, under the circumstances, was overtaken, ran against, and, by means whereof, one of his legs was broken, etc., etc., etc.
The question presented for our consideration is: Will *224 an action lie by an employe against his principal, for injuries sustained by the carelessness of another employe? The question, in this State, is an open one; it has undergone much discussion in the different Courts of many of the States, and also in the English Courts.
It has been held in England, by a series of decisions, and it seems to be now well settled in the jurisprudence of that country, that a servant who is injured by the negligence or misconduct of a fellow servant, cannot maintain an action against the master for such injury: Redfield on Railways, 376, and the authorities cited. The same principle has been recognized and adopted in most of the States of the Union. In a case before this Court, 3 Head., 648, the Court in commenting on this rule of law, say: “That the master is not liable for an injury received by one servant, for the negligent conduct of another, while both are acting in the common business of the same master. As applied to railway companies, it is comparatively a new question everywhere, but especially in our Courts. It is a principle of great practical importance, and care must be taken that it be not applied to cases not clearly falling within the rule; that such latitude be not given to the rule as would enable the corporation to evade liability in all cases by intrenching itself behind its officers and agents. The question was not determined by the principle decided in that case. It is manifest from the reasoning of the Court, they were of the opinion the principle should not be applied to servants acting in different *225 grades who are subordinated. In 20 Ohio, 450, and 3 Ohio, 202, cited in a note to Redfield on Railways, 388, the author says: “These cases are placed upon the ground the person injured being in a subordinate position.”
This question came before the Court of Appeals in Kentucky, reported in the Law Magazine, March Humber, 1866, in the case of Collins vs. The Louisville & Nashville Railroad. In that case, the Court held: “The rule of law, that the master is not responsible to one of his servants, is not adapted to the full extent of the English decisions. That servants so situated, in distinct grades of superiority and subordination, are not to be considered as fellow-servants, or in the same sense, but rather in the light of strangers to each other in their duties and responsibilities; and the subordinate may recover of the company for an injury sustained by the ordinary neglect of the superior.” Upon a review of this case, though the principle eminated and held to be the rule of law in that State is not supported by a list of cited authorities, we think it is consistent with reason and common justice, and is sustained by the principles of common sense and sound public policy; and we are unable to see the reason of the rule why men who are engaged in a subordinate position, and who are injured by the agents or servants of the company, why the corporation should not be responsible for the negligent acts by which injury is inflicted upon those sobordinate servants of the same company. They are *226 its representatives, and in the operations and running the machinery of the road, carry out the purposes for which the corporation was created.
The corporation is liable for the negligent acts of its agents to third persons who are not connected with them; and we are unable to see, upon principles of justice, the reason for the rule, that the class of persons who occupy an inferior position as servants of the road, and who are injured by the negligent acts of those occupying a superior position, should not have the right .of recovery against the corporation, for damages sustained.
The plaintiff in this suit, by his contract, was engaged in repairing the road of the defendant. His business compelled him to be on the track. He knew the time at which the train left Chattanooga. No danger could result to him in consequence of his being engaged in his business at that time, and at that point. Without notice of the change of time, the train is started at an unusual hour. His car is thrown from the track by the engine, and the plaintiff severely injured. Yet, this, it is argued, is done by an employe of the company, and both being servants of the same company, it is insisted that this action cannot, therefore, be maintained, though they are subordinate; and in support of this principle we are cited to a long list of American and English authorities.
The high character and bearing of many of the jurists, who have enunciated this principle, would have an influence with the Court in the determination of *227 this question; but upon an examination of tbe authorities cited, we are unable to see upon what principle a rule that seems to us not founded in justice, nor common right, should be upheld and maintained.
The question being an open one in this State, upon a review of the authorities, we are unwilling to recognize the rule, or give our assent to it, that an individual thus employed is run over and crippled, perhaps for life, shall not have the right of action for injuries inflicted upon him by one who is the servant or agent of the company, occupying a superior position, because they are both servants of the same master. It is in-consisent with our views of right, and of that protection which the law throws around every citizen, that for injuries inflicted by one to whom he is subordinate, he is entitled to compensation, where they have been negligently done. From the usual manner of running railroads, the conductors are controlled by the superintendent of the road; they leave, under his directions, with their trains — they are subordinate to him —he represents the company in this department — the business of running the trains, fixing the time of departure, and general management of the road is confided to him. In starting the train out of time, if injury resulted to a subordinate, thus situated, the company should be held responsible. Men associated togethef in a corporate body, loose that regard for private rights they have for individuals where they are held personally responsible for their acts.
The increasing number of corporations, with the concentrated wealth they draw to them, is a strong *228 and forcible reason why they should be held to a strict rule for the acts of their officers. Sound public policy requires that this principle should be adopted in this State. Knowing the responsibility they are under, they will see that none but competant men fill the responsible stations.
We are of opinion the Circuit Judge erred, in sustaining the demurrer. The judgment of the Circuit Court will, therefore, be reversed; and the cause be remanded for further proceedings.